Superseding, 9th Cir., 799 F.2d 1262.

Gary JORDAN; Douglas Smalley; Robert C. Curvey; Raymond L. Wielebski; Wallace Washington; Richard Kienitz; Herman Jackson; Donald Cobbs; Frank Jackson; and all others similarly situated, Plaintiffs-Appellants,

and

Jerome E. LaBarre of LaBarre and Associates, P.C., Petitioner-Appellant,

v.

MULTNOMAH COUNTY; Dennis Buchanan, County Executive; Fred Pearce, Sheriff; and Robert Skipper, Chief, Division of Corrections; each in their official capacities, Defendants-Appellees.

No. 84–4122.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1985.

Decided April 24, 1987.

Jerome E. LaBarre, Portland, Or., Phil Goldsmith, Portland, Or., for plaintiffs-appellants and petitioner-appellant.

John B. Leahy, Jane Ellen Stonecipher, Portland, Or., for defendants-appellees.

Before GOODWIN, PREGERSON and CANBY, Jr., Circuit Judges.

## ORDER

The petitions of plaintiffs-appellants and of appellees for rehearing are denied. This court's previous opinion in this case, reported at 799 F.2d 1262 (9th Cir.1986), is withdrawn, and the attached opinion is filed as the opinion of the court in this case.

CANBY, Circuit Judge:

Plaintiffs-appellants represent the class of "all present and future pretrial detainees, and all present and future sentenced offenders within the Multnomah County [Oregon] justice system." In 1982, we affirmed an award of attorneys' fees pursuant to 42 U.S.C. § 1988 to plaintiffs as prevailing parties in an action seeking injunctive relief under 42 U.S.C. § 1983. The action was brought to remedy conditions of confinement at the Rocky Butte Jail (RBJ) and to challenge proposed conditions at the Downtown Detention Center (DDC), which was planned to replace RBJ. Plaintiffs had also challenged population limits and length of stay limits at the Multnomah County Booking Facility (MCBF). *See Jordan v. Multnomah County*, 694 F.2d 1156 (9th Cir.1982)(per curiam).

Plaintiffs now appeal the district court's award of attorneys' fees for legal services rendered on behalf of the plaintiff class between September 28, 1982, and October 26, 1983. These services were for the purposes of preventing the early opening of I-205, a freeway constructed adjacent to RBJ, and of obtaining an order holding defendants in contempt for violation of the injunction limiting population and length of stays at MCBF.[1]

Plaintiffs contend that the district court abused its discretion in awarding them attorneys' fees in the amount of $43,500, substantially less than the $160,130 that they requested.[2] We affirm in part, and reverse in part and remand.

**FACTS:**

*The I-205 Issue.* Plaintiffs submitted a fee application that requested compensation for 110.9 hours for the time of their lead attorney, Mr. LaBarre, at the rate of $140 per hour. They sought compensation for 72.7 hours of associate time at $80 per hour. The total request was for $19,382 before application of a multiplier. The district court awarded $7,500, finding that much of the work undertaken by plaintiffs' counsel was not "legal in nature."[3] The

---

1. After entry of its original orders in this action, the district court retained jurisdiction in the case. In August 1982, the court *sua sponte* ordered the action to be dismissed, finding that it was no longer necessary to retain jurisdiction. Counsel for the plaintiff class successfully obtained reinstatement of the action. The district court denied plaintiffs' application for attorneys' fees in the amount of $3,312 for services relating to the reinstatement proceeding. Plaintiffs do not appeal that ruling.

2. Plaintiffs based their application for $160,130 in attorneys' fees on the current hourly rates billed by their counsel multiplied by the total number of hours submitted, modified by a multiplier of two.

3. Mr. LeBarre's activities with regard to the I-205 issue were undertaken because he believed his role as attorney for the class in an action over which the district court had retained jurisdiction imposed a "watchdog" function on him. When it became apparent that the I-205

freeway might open before the inmates at RBJ could be moved to the new downtown facility, Mr. LeBarre was approached by "a responsible public official privy to the facts." Mr. LeBarre undertook an investigation of the impact of the early opening of the freeway upon the inmates. However, neither the court nor Mr. LeBarre's client, the class, requested that he undertake the investigation.

In the course of his activities with regard to the I-205 issue, Mr. LeBarre obtained environmental data and had it analyzed, reviewed press clippings, responded to public officials and the press, attended public meetings, and negotiated with county officials. No motion or proceeding was brought before the court with regard to the I-205 issue, which was not directly within the scope of the original order. While we commend Mr. LeBarre's diligence on behalf of his client class, we believe that, under the circumstances, it would have been appropriate for him to seek guidance from the court. *See Hensley v. Eckerhart*, 461 U.S. 424, 447, 103 S.Ct. 1933,

court found that the range of time necessary for the type of work performed by counsel on the I–205 issue was 50 to 150 hours and that the fees for work of this nature ranged from $65 to $100 per hour. The court's finding was based in part upon rates paid to plaintiffs' counsel in the past for similar services. The court denied the request for a multiplier.

*Contempt Proceeding.* Multnomah County violated the court's order with regard to the length of stay and population limits at MCBF. Plaintiffs' counsel instituted contempt proceedings and eventually prevailed. Plaintiffs requested compensation for 403.4 hours at hourly rates of $80 per hour for associate time and $140 per hour for Mr. LeBarre's time. The total fee request on the contempt issue was $45,544 before application of the requested multiplier. The district court awarded $30,000 in attorneys' fees, finding

> that the number of hours for which plaintiffs seek recovery is high. However, far fewer hours would have been spent had the County been more cooperative in the investigative phase of the case. I find that the range of hours reasonable to be spent in such a matter is from 300 to 400 hours. I find that $100 to $125 an hour is a reasonable hourly rate for compensation in such matters.

The court denied plaintiffs' request for a multiplier.

*Attorneys' Fees Applications.* Plaintiffs sought compensation for time expended by counsel in pursuit of their attorneys' fees applications on the I–205 and contempt matters. Plaintiffs' counsel initially submitted an application for 36.3 hours of time on attorneys' fees matters. However, the district court requested additional documentation on the I–205 issue because that matter had been handled outside the purview of the court. Plaintiffs' counsel spent a substantial amount of time preparing the requested documentation. After voluntarily reducing the fee request by over 37 hours, plaintiffs requested compensation for a total of 153.6 hours for fee application matters. The requested fee totaled

$19,059 at $80 per hour for associate time and $140 per hour for Mr. LeBarre's time. The district court found that 50 to 75 hours was a reasonable amount of time to expend on this matter and awarded a fee of $6,000. The court did not grant plaintiffs' request for a multiplier.

**DISCUSSION:**

█ In a federal civil rights action or proceeding, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. We review the district court's determination of the amount of attorneys' fees awarded pursuant to § 1988 for an abuse of discretion. *See Ackerley Communications, Inc. v. City of Salem,* 752 F.2d 1394, 1396 (9th Cir.), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3503, 87 L.Ed.2d 634 (1985); *Sethy v. Alameda County Water Dist.,* 602 F.2d 894, 897 (9th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). The district court's discretion to award attorney's fees under § 1988 has, however, been narrowly construed, *Ackerley Communications,* 752 F.2d at 1396, and is circumscribed by decisions of the Supreme Court and this circuit. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The district court should clearly and concisely explain the grounds for its decision. *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 785 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).

*I. Reasonableness of Attorney's Fee.*

Congress provided for an award of reasonable attorneys' fees to successful civil

1946, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring in part, dissenting in part).

rights plaintiffs "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937 (quoting H.R.Rep. No. 94–1558, p.1 (1976)). While § 1988 does not explain what constitutes a reasonable fee, the legislative history expressly endorses the guidelines developed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[4] *See* S.Rep. No. 94–1011, p. 6 (1976); H.R.Rep. No. 94–1558, p. 8 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908; *City of Riverside v. Rivera,* —— U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

The Supreme Court has adopted a "hybrid approach" to the question of the proper manner by which to determine a reasonable attorneys' fee. *See Pennsylvania,* 106 S.Ct. at 3097; *Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. This approach combines elements of the *Johnson* 12–factor analysis and the lodestar method of calculation developed by the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973).[5] The lodestar determination has emerged as the predominate element of the analysis. *See Pennsylvania,* 106 S.Ct. at 3098.

 " 'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Pennsylvania,* 106 S.Ct. at 3097 (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939). This product may then be adjusted on the basis of "other considerations." *Id.* at 3098 (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940). *Hensley* viewed the "other considerations" to include the *Johnson* factors, but noted that "many of these factors usually are subsumed" within the lodestar calculation.[6] A "strong presumption" exists that the lodestar figure represents a "reasonable" fee, *Pennsylvania,* 106 S.Ct. at 3098, and upward adjustments of the lodestar are proper only in "rare" and "exceptional" cases, supported by specific evidence on the record and detailed findings by the district court. *Blum,* 465 U.S. at 898–901, 104 S.Ct. at 1548–49.

 Consequently, a critical inquiry in determining a reasonable attorneys' fee for purposes of § 1988 is the reasonable hourly rate. *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. The prevailing market rate in the community is indicative of a reasonable hourly rate.[7] *Id.* at 895, 104

4. The *Johnson* court posited a twelve factors to be considered in calculating a reasonable attorneys' fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19. These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980). *See Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3.

5. The lodestar is calculated by multiplying the hours spent by each attorney by a reasonable hourly rate. *Pennsylvania,* 106 S.Ct. at 3097. Under the Third Circuit's approach, the court could then make adjustments to the lodestar figure based on the "riskiness" of the lawsuit and the quality of the attorney's work. *Id.* While this approach provided a more analytical

framework for lower courts to follow than the *Johnson* factors, the Supreme Court noted that it could still produce inconsistent attorneys' fees awards. *Id.*

6. Among the *Johnson* factors that cannot serve as independent bases for adjusting fee awards are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained. *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984); *Pennsylvania,* 106 S.Ct. at 3098–99 (superior performance is not a proper basis for adjusting the lodestar).

7. Appellants contend that *current* billing rates must be used. The use of current rates is one method of compensating for the effects of inflation, and may be required if the effects of inflation would otherwise render the fee award unreasonable. *Suzuki v. Yuen,* 678 F.2d 761, 763 (9th Cir.1982). Adjustment for inflation is not required in every case, however; the question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in pay-

S.Ct. at 1547. The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *See id.* at 895–97 and n. 11, 104 S.Ct. at 1547–48 and n. 11. If the applicant satisfies its burden of showing that the claimed rate and number of hours [8] are reasonable, the resulting product is presumed to be the reasonable fee contemplated by § 1988. *Id.* at 897, 104 S.Ct. at 1548; *Pennsylvania,* 106 S.Ct. at 3098.

▆▆▆▆▆▆ Plaintiffs presented the district court with evidence in addition to the affidavits of Mr. LeBarre to show that the claimed rates were in line with those prevailing in the community.[9] Plaintiffs also submitted records "sufficient[ly] detail[ed]

that a neutral judge [could] make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley,* 461 U.S. at 441, 103 S.Ct. at 1943 (Burger, C.J., concurring). Yet the district judge made no finding on the sufficiency of the evidence. He applied an unsupported "range" hourly rate to a "range" of hours to arrive at a fee that he deemed reasonable.[10] While the district court is in the best position to judge the reasonableness of the fee award, *see Harmon v. San Diego County,* 736 F.2d 1329, 1331 (9th Cir.1984)(*Harmon II*), such a position does not mean the trial judge can remain silent as to how she or he reached the "reasonableness" conclusion. The record must inform us of the trial court's basis for determining reasonable attorneys' fees in order for an appeal to be meaningful.[11] We therefore reverse the

---

ment. *Clark v. City of Los Angeles,* 803 F.2d 987, 992–93 (9th Cir.1986).

**8.** It is not sufficient for prevailing counsel to opine that all of the time claimed was usefully spent, and the district court should not uncritically accept counsel's representations concerning the time expended. *Sealey, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1385 (9th Cir.1984). The fee claimant must show that the time spent was reasonably necessary and that its counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 1385 (quoting *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939 (1983)).

**9.** Plaintiffs submitted the affidavit of Charles J. Merten, a member of the Oregon bar since 1963. In the affidavit, Mr. Merten states, "I believe that these hourly rates are reasonable and consistent with those being charged by attorneys of comparable skill and experience on comparable matters in this community." While we do not consider here the sufficiency of the evidence necessary to support the claimed fee rate, we note that Mr. Merten did not indicate that the rates sought were comparable to his rates, and that plaintiffs did not submit evidence to support Mr. Merten's belief.

**10.** Even if the chosen ranges had been supported by the evidence, the district court offered no explanation why its award for the I–205 services fell in the lower part of the chosen "reasonable" ranges, while the award for contempt services fell at the absolute bottom of its ranges. Thus plaintiffs sought compensation for 403.4 hours spent on the contempt proceed-

ing; the district court found 300–400 hours to be in the reasonable range; yet the court appears to have awarded fees for only 300 hours.

**11.** In *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), this circuit adopted the 12–factor *Johnson* test to give trial courts a concrete framework on which to hang attorneys' fees cases, saying the "failure to consider such factors [would] constitute an abuse of discretion." *Id.* at 70.

The circuit has since relaxed the standard, saying that application of at least some of, or the most relevant, factors may be sufficient for review on appeal. *See Harris v. McCarthy,* 790 F.2d 753, 758 (9th Cir.1986)(factual findings not held to be clearly erroneous when district court opinion mentioned all 12 *Kerr* factors, and explicitly applied at least three of the factors); *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 785 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) ("Although we do not sanction the district court's failure to explicitly set forth its consideration of the *Kerr* factors, we believe that the court's decision, which sets forth a consideration of the most relevant factors, is sufficiently detailed for meaningful review on appeal.") *See also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983):

We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. *It remains important, however, for the district court to provide a concise*

award of attorneys' fees and remand for redetermination of a reasonable fee in accordance with this opinion.

## II. *Multiplier.*

■ Plaintiffs requested that the court upwardly adjust the fee awards by applying a multiplier of two. Plaintiffs argue that they are entitled to a multiplier on each matter because the issues were unpopular in the community and because of the risk that counsel would not be paid if plaintiffs did not succeed. The district court refused to award an upward enhancement, finding that one was not required. Although the district court did not explain the basis for this conclusion, we find that the district court did not abuse its discretion, because, based on the record before us, plaintiffs "failed to carry [their] burden of justifying entitlement to an upward adjustment." *Blum,* 465 U.S. at 901–02, 104 S.Ct. at 1550–51. *See also Pennsylvania,* 106 S.Ct. at 3099–3100.

Plaintiffs introduced no evidence that an enhancement was necessary to provide fair and reasonable compensation. *See Blum* 465 U.S. at 901, 104 S.Ct. at 1550 (upward adjustment is appropriate only where enhancement is necessary to provide fair and reasonable compensation). The I–205 and the contempt matters sought enforcement of the protections provided by injunctive relief that plaintiffs had previously obtained. The risk [12] of non-payment due to lack of success was accordingly low. Public anger that the opening of a much-needed freeway section might be delayed by the prisoners' opposition does not constitute the sort of unpopularity that entitles a civil

rights plaintiff to fee enhancement in the absence of evidence that plaintiffs or their counsel were adversely affected by that unpopularity. *See Planned Parenthood v. Arizona,* 789 F.2d 1348, 1354 (9th Cir. 1986). Plaintiffs have failed to show by specific evidence on the record that receipt of a reasonable hourly rate times the number of hours reasonably spent on these matters does not constitute a fully compensatory fee. *See id. See also Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–1549. We, therefore, affirm the denial of a multiplier.

■ This matter is remanded to the district court for a redetermination of a reasonable attorneys' fee to compensate plaintiffs' counsel for their efforts in the I–205, contempt, and fee application matters. Plaintiffs are also entitled to a reasonable fee for their attorneys' services in prosecuting this appeal. On remand, the district court should determine the time spent and fees to be awarded on this appeal. *See Probe,* 780 F.2d at 785–86; *Williams v. Alioto,* 625 F.2d 845, 849–50 (9th Cir. 1980)(per curiam), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527, 530 (9th Cir.1975)(allowing compensation for services rendered solely to obtain the allowance of attorney's fees). *See also Manhart v. City of Los Angeles, Dept. of Water & Power,* 652 F.2d 904, 909 (9th Cir.1981), *vacated on other grounds,* 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983).

Appellants are entitled to costs.

*but clear explanation of its reasons for the fee award.* When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, *the district court should make clear that it has considered* the relationship between the amount of the fee awarded and the results obtained. (Emphasis added).

12. The Supreme Court has not addressed whether the risk of not being the prevailing party in a § 1983 case and, therefore, not being entitled to an award of attorneys' fees may ever justify an upward adjustment. *Pennsylvania,* 106 S.Ct. at 3100 (ordering case set for reargument on

whether attorneys' fees chargeable to a losing defendant under the Clean Water Act and comparable statutes may be enhanced based on risk of loss); *Blum,* 465 U.S. at 901 n. 17, 104 S.Ct. at 1550 n. 17. *But see Blum,* at 903, 104 S.Ct. at 1551, (Brennan, J., concurring) ("It is clear ... that Congress authorized district courts to award upward adjustments to compensate for the contingent nature of success, and thus for the risk of nonpayment in a particular case"). *See also LaDuke v. Nelson,* 762 F.2d 1318, 1333 (9th Cir.1985) (district court may take contingent nature of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412), amended, 796 F.2d 309 (9th Cir.1986).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.